2003 VT 100

**Claire J. TRAHAN v. Michael J. TRAHAN, PayData Payroll Services, Inc., Bergeron, Paradis, Fitzpatrick & Smith, Vincent Paradis, and John O'Donnell**

[839 A.2d 1246]

No. 03-131

¶ 1. October 29, 2003. Plaintiff Claire Trahan appeals a summary judgment in favor of defendants Michael Trahan (plaintiff's former husband), Michael's company, and the company's attorneys. Concluding that Michael and Claire's divorce judgment prevented Claire from relitigating a factual issue that was key to her claims in superior court, the court dismissed her complaint, and she now appeals. We affirm.

¶ 2. The relevant facts are undisputed. Michael and Claire were divorced in 1998 after a twenty-six year marriage. During the divorce proceeding, the couple disputed the value of a payroll services business the couple started in 1987 and which they jointly owned at the time of the divorce. The company, PayData Payroll Services, Inc., writes payroll checks and provides other services to its roughly 800 clients, which are primarily small and medium-sized businesses in New England and upstate New York. In addition to the fees the company charges for its

services, PayData receives income through interest earned on the money the company's clients deposit with it to cover their payroll. Not all of the checks PayData writes are cashed. Prior to 1996, the company had not reconciled the bank accounts it used to make payments to employees. By the time of the final divorce. hearing, a sum of $2.175 million had accumulated in the company's unreconciled accounts. In April 1998, the money was placed in a trust pending a reconciliation of the company's accounts. Whether the funds in the trust should be considered PayData assets for the purpose of valuing Michael and Claire's marital estate was the most contentious issue during the divorce. Both parties offered expert testimony on this issue.

¶ 3. Ultimately, the family court found it "more likely than not" that the $2.175 million belonged to PayData's clients, although it acknowledged that the finding lacked certainty. The court also found that the couple's marital interest in PayData was at least $2 million, and it concluded that Michael and Claire should share the company's value equally. Neither party appealed the final judgment to this Court. As of March 1999, Claire no longer had a legal or financial interest in PayData because Michael had purchased her marital interest in the company in accordance with the divorce decree.

¶ 4. In October 1999, Claire filed suit against Michael, PayData, and the attorneys who advised PayData on creating the trust for the disputed $2.175 million. In addition to other relief, Claire initially sought a declaration that the trust contained abandoned property that must be reported and surrendered to the state. Following the state treasurer's intervention and subsequent withdrawal from the action, Claire discovered that $1.8 million of the funds held in trust were transferred to a PayData corporate account before Michael and Claire's divorce was final. Believing that the transfer was improper and that it supported her claim

that the funds belonged to PayData (and in turn PayData's owners), Claire amended her complaint. The amended complaint presented two claims: (1) a shareholder derivative claim seeking an accounting "to determine whether there has been a misappropriation of corporate funds," and (2) a breach of fiduciary duty claim against the trustees of the $2.175 million trust for failing to reconcile the trust funds, and for transferring a portion of the funds to PayData's corporate accounts before completing the reconciliation. In support of her claim against the trustees, Claire alleged that without a reconciliation, the extent of her interest in the trust funds was unknown. Claire sought compensatory damages as well as injunctive relief in the form of an escrow account for the trust funds pending an audit and reconciliation.

¶ 5. In January 2003, the superior court dismissed Claire's complaint, concluding that she was collaterally estopped by the prior divorce judgment from relitigating the ownership of the $2.175 million. The court explained that if the money did not belong to PayData, neither the company nor Claire as its derivative had any legal interest in its proper management. Thus, summary judgment in defendants' favor was required. Claire then took the present appeal.

¶ 6. Claire argues on appeal that the superior court erred by concluding that collateral estoppel bars her from pursuing her claims against Michael, PayData, and the lawyers who drafted the trust and served as its trustees. We review her claim de novo because whether collateral estoppel applies to a particular set of facts is a question of law. *Farrell v. Mountain Folk, Inc.*, 169 Vt. 568, 569, 730 A.2d 597, 599 (1999) (mem.).

¶ 7. Collateral estoppel prevents a party from relitigating an issue that was decided in a prior adjudication. *Id.* The following criteria must be met for the doctrine to apply:

(1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair.

*Trepanier v. Getting Organized, Inc.*, 155 Vt. 259, 265, 583 A.2d 583, 587 (1990). "Issue preclusion applies to issues of fact as well as law." *Mellin v. Flood Brook Union Sch. Dist.*, 173 Vt. 202, 209, 790 A.2d 408, 416 (2001). The first criterion is easily satisfied as there is no question that Claire is the party against whom preclusion is being asserted and that she was a party to the earlier divorce action.

¶ 8. To determine whether the second, third, and fourth criteria are also satisfied, we must identify what is at issue here and what was at issue in the divorce. Claire argues that the issue is whether Michael and the trustees wrongfully withheld profits from PayData to her detriment. We disagree. The key issue here is whether the funds that were placed in trust belonged to PayData and its shareholders or were the property of the company's clients because, as the superior court reasoned, if Claire had no interest in the trust funds, she had no interest in the propriety of defendants' actions relative to the trust. Claire's complaint acknowledges that ownership of the funds in the trust account was at issue during the divorce. Nevertheless, her amended complaint asked the superior court for an investigation and accounting of the trust fund to determine the extent of her interest in the trust corpus and whether defendants' actions harmed that interest. The extent of Claire's interest in the disputed money was, however, determined in the divorce

proceeding, which concluded that the $2.175 million did not belong to the company or, in turn, its shareholders. Claire did not appeal that finding, and it is therefore conclusive on the issue insofar as her interest is concerned.

¶ 9. Claire claims that collateral estoppel should not apply here because she did not know about the transfer of $1.8 million before the divorce became final and thus did not have an adequate opportunity to litigate the matter. She theorizes that the transfer demonstrates that the funds were not in fact client funds, as the family court found, but were company funds. That Claire was unaware of the transfer does not mean that she did not have an adequate opportunity to contest the ownership of the $2.175 million. The record the parties supplied on appeal demonstrates that Claire and Michael contested this question because it was necessary to determine their marital interest in PayData for an equitable property division. We note that Claire filed this case in superior court even before she knew about the allegedly improper transfer.

¶ 10. As to the final collateral estoppel criterion — whether it is fair to preclude relitigation of an issue — we agree with the superior court that fairness supports the use of estoppel. None of the defendants should be required to expend their time and financial resources litigating an issue that was the subject of dispute and final resolution in Claire and Michael's divorce.

¶ 11. We observe that Claire's complaint amounts to an impermissible collateral attack on the 1998 divorce judgment. Cf. *Tudhope v. Riehle*, 167 Vt. 174, 179-80, 704 A.2d 765, 767-68 (1997) (holding that separate action complaining of fraudulent inducement to enter settlement agreement in a prior divorce was barred by res judicata). This is not a case like *Farrell v. Mountain Folk, Inc.* in which we permitted the plaintiff to pursue her civil action for misappropriation

of corporate funds by her then husband and others because the family court expressly did not adjudicate the issue during the parties' divorce. See .169 Vt. at 570, 730 A.2d at 599. Nor are the facts of this case like *Slansky v. Slansky*, 150 Vt. 438, 553 A.2d 152 (1988). In that case we held that a prior divorce judgment did not preclude a subsequent tort claim between divorced spouses because the claim was neither raised during the divorce nor necessary to its final resolution. See 150 Vt. at 441-42, 553 A.2d at 154. Instead, similar to the collateral attack in *Tudhope*, Claire seeks a declaration that at least some of the funds in the trust were company funds which added value to the marital estate, and the family court did not account for that value in its property award. To the extent that Claire disagreed with the property award based on the family court's findings on the ownership of the disputed funds, the proper avenue for relief was either an appeal to this Court or a motion to the family court to set aside the divorce judgment under V.R.C.P. 60(b).

¶ 12. Because of our disposition, we do not reach Michael's additional arguments that Claire, who was not a shareholder of PayData when the action was brought, cannot bring a shareholder derivative action, and that she also lacks standing to bring an action with respect to the trust.

*Affirmed.*